## LEVINSON v. COMMISSIONER OF INTERNAL REVENUE.

### LEVINSON et al. v. SAME.

### Nos. 139 and 140.

Circuit Court of Appeals, Second Circuit.

March 15, 1946.

Louis F. Lee, of New York City, for petitioner.

Sewall Key, Acting Asst. Atty. Gen., and J. Louis Monarch, and I. Henry Kutz, Sp. Asst. to Atty. Gen., for respondent.

Before L. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

Edwin D. Levinson filed an individual income tax return for 1939 and with his wife filed a joint return for 1940. The Commissioner determined a deficiency for each year and was sustained by the Tax Court. This petition to review followed and as the questions raised are identical for each year they will be discussed as one deficiency and as though Mr. Levinson were the only petitioner. Both petitions were filed on the cash basis and payments received by Mr. Levinson in each year as the result of agreements relating to a New York Stock Exchange seat which he owned were taxed as ordinary income. He contended unsuccessfully that they should be taxed as long term capital gains upon the sale or exchange of a capital asset limited as provided in § 117 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 117.

Levinson bought a seat on the New York Stock Exchange in 1918 for $51,600. In 1925 he became a partner in the stock exchange firm of Baar, Cohen & Company in accordance with articles of partnership which provided, in so far as presently material, that he contributed the use of his exchange seat to the partnership but that he should always retain the ownership of it. It was provided that he would be paid temporarily for such use a sum equal to six per cent of $125,000 in quarterly installments and that at the end of the partnership year, the hundred and twenty-five thousand dollar valuation should be adjusted to equal the average of the prices for which such seats were sold during the year. It was also agreed that all compensation paid for the use of the seat should be charged to the expense account of the partnership. It was further agreed that upon the termination of the partnership, unless there should be a renewal and then upon termination of the renewal

agreement, notwithstanding Levinson's retention of ownership of his seat "the copartnership shall in manner following benefit by any increase over, and hold him harmless against any loss, respecting its 1925 market value which, for the purposes hereof, shall be taken as represented by the selling price on the last sale of any such seat in the year 1925." As time went on new men became partners and new partnership agreements were entered into but these provisions were continued as between Levinson and his original partners or the survivors after one died, up to retirement in 1939, the 1925 value of the seat having been fixed at $147,000. He acted as the floor member of the firm until 1928 when he became ill. Then one Smith was designated by the partners to act as floor member and for this purpose Levinson transferred the legal title to his seat to Smith who paid nothing for it, it being understood that the equitable ownership of the seat remained in Levinson who continued to be paid for the use of it according to the above agreement and to whom the legal title was to be transferred upon termination of the partnership. In May 1928 Smith became a member of the firm and in the new partnership articles it was provided that he should contribute the use of "his membership in the New York Stock Exchange" and that "in so far as it is necessary for the protection of the creditors of said copartnership, subject however to the constitution of said New York Exchange, the proceeds of said membership shall be deemed to be an asset of said copartnership."

The original agreement in respect to the seat, modified as heretofore stated, continued in effect notwithstanding the termination of old and creation of new partnerships until in 1939 Levinson decided to terminate the partnership then existing and requested the return of his seat which he had transferred to Smith. As the new partnership formed upon the withdrawal of Levinson wanted Smith to have a seat and if Levinson's seat held by Smith were transferred to Levinson and another bought for Smith both would have to pay initiation fees of $4000 it was decided after about sixty days during which the matter was discussed that another seat should be purchased for Levinson and Smith should retain Levinson's old seat standing in his name. In that way the cost of one initiation fee would be saved and that was done in lieu of returning the old seat to Levin-

son as the partnership agreement provided. The Tax Court found that the seat purchased by Levinson in 1918 and later transferred to Smith "was never carried as an asset on the books of the partnership." The payments which were taxed as ordinary income are those made to Levinson in 1939 and 1940 by his original partners in discharge of their agreement to bear their agreed share of the loss caused by the shrinkage in the value of the seat at the time Levinson withdrew from its 1925 agreed value.

The Tax Court said in reply to the petitioner's contention that these payments were the proceeds of a sale or exchange of his seat, "The short answer to this is that Levinson did not sell or dispose of the seat. He continued to own it after the termination of his association with the partnership, and in addition he received the $61,714.29 to make up to him the reduction in its value." We understand the Tax Court to mean that the various partnership agreements dealing with the use and disposition of the seat did not amount to a sale or exchange of it and that is why it was said that he continued to own it after the termination of his association with the partnership. There is support in the record for this conclusion at least up to the time when in settling the liability of his partners to return his seat to him he accepted another. It is accordingly our duty to give it effect. Choate v. Com'r, 324 U.S. 1, 65 S.Ct. 469; Com'r v. Scottish American Inv. Co., 323 U.S. 119, 65 S.Ct. 169. The payments made to the petitioner by his partners were not proceeds from the sale or exchange of the seat but were under the partnership agreements due to him as additional compensation from them for the use of the seat. They were due and payable to him whether or not his old seat were returned to him and the settlement respecting the disposition of his old seat did not change their character.

Munson v. Com'r, 2 Cir., 100 F.2d 363 is distinguishable. In that case the partner who owned the seat contributed it to the partnership and it was carried on the books as a partnership asset. Upon the dissolution of the partnership it was to be sold or, at the option of the partner who contributed it, it was to be retained by him with the difference between its cost and its value at the time of dissolution, whether that should be gain or loss, divided or shared equally by the partners. His reten-

tion of it under his option was a disposition of a capital asset of the partnership resulting in partnership capital gains which were distributed to his partner when the latter received them.

Affirmed.